Mr. Kenneth H. Hart, Jr. General Counsel Florida Lottery 250 Marriott Drive Capitol Complex Tallahassee, Florida 32301
Dear Mr. Hart:
You have asked for my opinion on substantially the following question:
May the Florida Lottery contract with cruise ship lines to serve as lottery retailers?
In sum:
In the absence of clear legislative direction, the Florida Lottery may not contract with cruise ship lines to serve as lottery retailers as such contracts would not appear to serve the interests of the general public as defined in the lottery enabling legislation.
Chapter 24, Florida Statutes, is the "Florida Public Education Lottery Act."[1] As stated by the Legislature,
"The purpose of this act is to implement s. 15, Art. X of the State Constitution in a manner that enables the people of the state to benefit from significant additional moneys for education and also enables the people of the state to play the best lottery games available."[2]
Pursuant to section 24.105, Florida Statutes (1998 Supplement), the Department of the Lottery (the department) is authorized to supervise and administer the operation of the lottery in accordance with the "Florida Public Education Lottery Act" and the administrative rules promulgated under the act.[3] The legislatively stated purpose for the department is "to operate the state lottery as authorized by s. 15, Art. X of the State Constitution so as to maximize revenues in a manner consonant with the dignity of the state and the welfare of its citizens."[4]
Among those powers specifically provided to the department is the power to:
"(10) Adopt rules governing the establishment and operation of the state lottery, including:
* * *
(g) The number and type of locations at which tickets may be purchased.
* * *
(j) Such other matters necessary or desirable for the efficient or economical operation of the lottery or for the convenience of the public."[5]
The department is authorized to "enter into contracts with retailers so as to provide adequate and convenient availability of tickets to the public for each game."[6]
The statutes under which the department operates make repeated reference to the public availability of and accessibility to lottery games. For example, section 24.112(1), Florida Statutes, provides that, in promulgating rules for selecting retailers to sell lottery tickets, the department shall act in a manner that "will best serve the public interest and promote the sale of lottery tickets."[7] In making this selection, the department is required to consider a number of factors including "accessibility of the place of business or activity to the public[.]"[8] These statutes require that "retailer selections be based on business considerations and the public convenience[.]"[9]
Pursuant to these statutes, conduct that would be prejudicial to public confidence in the lottery is a sufficient basis for suspension or termination of a contract with a retailer.[10] Among those offenses particularly described in section 24.112(5), Florida Statutes, that may result in contract termination are fraud, deceit, or misrepresentation. Administrative rules relating to contract termination specifically authorize termination if
"[t]he retailer has been convicted of, or has entered a plea of guilty or nolo contendere — regardless of adjudication — to an offense punishable as a felony; or has been convicted of, or has entered a plea of guilty or nolo contendere — regardless of adjudication — to any gambling-related offense."[11]
Thus, the confidence the public places in particular retailers and the reflection of that confidence on the department itself is a primary consideration for selecting retailers and allowing them to continue to provide this service. In fact, as the administrative rules promulgated by the department make clear, the lottery is authorized to terminate or suspend a retailer contract if "[t]he retailer has engaged in conduct prejudicial to public confidence in the Lottery."[12]
While contracting with cruise ship lines to act as lottery retailers may accommodate a certain segment of the public, I cannot conclude that it would satisfy the more broadly-based public interest and convenience requirement contemplated by the statutes. The portion of the public that could be served by a cruise ship is limited by the very nature of the business itself, that is, only those members of the public willing and able to purchase a ticket for the cruise would be able to participate in the lottery games offered. In no other situation of which I am aware or to which you have drawn my attention would the public be required to pay an admission charge in order to participate in lottery games. In fact, rules of the department authorize the termination or suspension of a retailer contract if "[t]he retailer has required a customer to purchase another item in order to purchase a lottery ticket."[13]
This consideration would also be a factor in the enforcement of the lottery statutes. The Department of the Lottery is charged with supervising and administering the operation of the lottery in accordance with Chapter 24, Florida Statutes, and the applicable administrative rules.[14] In performing these duties, lottery investigators have the power to investigate and make arrests for any violation of the lottery statutes or any administrative rules adopted pursuant to the act.[15] The lottery act authorizes these officers to
"enter upon any premises in which lottery tickets are sold, manufactured, printed, or stored within the state for the performance of their lawful duties and may take with them any necessary equipment, and such entry shall not constitute a trespass. In any instance in which there is reason to believe that a violation has occurred, such officers have the authority, without warrant, to search and inspect any premises where the violation is alleged to have occurred or is occurring. Any such officer may, consistent with the United States and Florida Constitutions, seize or take possession of any papers, records, tickets, currency, or other items related to any alleged violation."[16]
Monitoring cruise ship operations for compliance with the statutes and administrative rules would require the presence of lottery agents on cruises during which the lottery games were played. Unlike inspections conducted on other retail establishments such as convenience stores, these unannounced monitoring visits would require the purchase of tickets to enable lottery investigators to perform their duties. Again, I am unaware of any other situation in which the purchase of an admission would be required in order to enable lottery inspectors to monitor the compliance of a retailer with the lottery statutes.
In sum, in the absence of clear legislative direction, it is my opinion that the Department of the Lottery may not contract with cruise ship lines to act as lottery retailers.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 24.101, Fla. Stat.
[2] Section 24.102(1), Fla. Stat.
[3] Section 24.105(2)(a), Fla. Stat. (1998 Supp.).
[4] Section 24.104(2), Fla. Stat.
[5] Section 24.105, Fla. Stat. And see, s. 24.109(1), Fla. Stat., authorizing the department to adopt emergency rules "for the preservation of the rights and welfare of the people in order to provide additional funds to benefit the public."
[6] Section 24.105(18), Fla. Stat. (1998 Supp.).
[7] See, s. 24.103(6), Fla. Stat., defining a "retailer" as "a person who sells lottery tickets on behalf of the department pursuant to a contract."
[8] Section 24.112(2), Fla. Stat.
[9] Section 24.112(2), Fla. Stat. And see, e.g., s.24.115(1)(e), Fla. Stat., authorizing the payment of prizes in amounts less than $600 by retailers "[f]or the convenience of the public[.]"
[10] Section 24.112(5)(e), Fla. Stat.
[11] Rule 53ER94-60(2)(b), F.A.C.
[12] Rule 53ER94-60(2)(v), F.A.C.
[13] Rule 53ER94-60(2)(z), F.A.C.
[14] Section 24.105(2)(a), Fla. Stat. (1998 Supp.).
[15] Section 24.108(2), Fla. Stat.
[16] Id.